WILBUR F. BARRICK, appellant, v. VICTOR SMITH, appellee.

## No. 49057.

(Reported in 80 N.W.2d 326)

January 15, 1957.

Kelly, Spies & Culver, of Emmetsburg, for appellant.

Cornwall & Cornwall, of Spencer, for appellee.

Oliver, J.—This is an action for damages resulting from a collision of automobiles on Iowa State Highway No. 17, November 15, 1954, at 8:20 a. m. The petition alleged the cause of the collision was the sudden stopping, without signal, of defendant's automobile which plaintiff's automobile was following, upon the paved portion of Highway 17. Plaintiff fixed the place of the collision at 60 or 70 feet south of a lane running west to the highway from the Fitzgerald farm home, located east of the highway. This lane is referred to in the record as Fitzgerald drive.

Plaintiff testified he first saw defendant's automobile one and one-half to two miles north of Fitzgerald drive, and followed it south on Highway 17, at a distance of 75 to 100 feet and at a speed of 50 or 55 miles per hour. When plaintiff's car was exactly opposite Fitzgerald drive he saw the school bus standing there. It was facing north and was not on the pavement but was parallel to and several feet from the east edge of the pavement, on plaintiff's left. "I glanced at the school bus—I'd met it every morning for a week or so—and glanced at it wondering why it was setting there, and looked back at the road and Mr. Smith (defendant) had stopped on the highway in front of me." Plaintiff's efforts to avoid a collision by stopping and turning were unsuccessful and his car struck the rear end of defendant's car.

"I did not observe whether or not the flashing lights were on, turned on, on the school bus. I do not know whether or not the stop arm was up on the school bus. I did not observe any signal from Mr. Smith that he was going to stop." "I didn't observe the stop light being on. I never saw any hand signal of Mr. Smith's. I don't think there was any given." Plaintiff testified it would have been possible for a signal to have been given by defendant while plaintiff's attention was focused on the school bus. "The impact of my car with the back end of the Smith car was fairly square." "The impact occurred between 60 or 70 feet (south) from the driveway. After the impact, Smith's car went on down south 50, 60 feet, maybe a little farther." The first time plaintiff saw the school bus was when he was even with the Fitzgerald drive.

Subsection 1 of section 321.372, Code of Iowa, 1954, requires, in part, that the driver of a school bus turn on its flashing stop warning signal lights not less than 300 feet nor more than 500 feet from the point where the bus is to stop to receive or discharge pupils, and at said point bring the bus to a stop and extend the stop arm. After receiving or discharging pupils the driver shall turn off the flashing stop warning lights, retract the stop arm and then proceed. Subsection 3 states:

"The driver of any vehicle when meeting a school bus on which the stop warning signal lights are flashing shall reduce the speed of said vehicle to not more than twenty miles per hour, and shall bring said vehicle to a complete stop when school bus stops and stop signal arm is extended and said vehicle shall remain stopped until stop arm is retracted after which driver may proceed with due caution."

Code section 321.354 provides in part: "* * * school busses may stop on highway for receiving and discharging pupils and all other vehicles shall stop for school busses which are stopped to receive or discharge pupils, as provided in section 321.372."

Mr. Mehan, the driver of the school bus, was a witness for plaintiff. He testified the bus was stopped for three or four minutes, headed north and parallel to and three or four feet east of the east edge of the pavement, where the Fitzgerald drive joins the highway. He regularly transported the Fitzgerald children to school and was waiting for them to come down the lane to the

bus. He did not observe the two automobiles or the collision. He testified he always put on the flasher lights and put the stop arm in the stop position, before stopping the bus. Although he did not remember "for sure" that particular occasion, to the best of his recollection, on November 15, he handled the stop arm and blinkers on the bus the same as he always handled them.

The only other testimony concerning the collision came from a deputy sheriff. He testified to the position and condition of the cars after the accident and that the weather was clear, the road was dry and the temperature was fairly warm.

At the conclusion of the evidence for plaintiff the court sustained defendant's motion for a directed verdict. From the judgment rendered against him, plaintiff prosecutes this appeal.

One ground of the motion for directed verdict, sustained by the court, was that plaintiff had failed to sustain the burden to prove his freedom from contributory negligence.

■ I. Appellant testified he did not reduce his speed or bring his car to a stop before passing the school bus. However, he contends the statutes above quoted were not applicable because the school bus was not stopped upon the pavement. He does not contend it was not stopped upon the highway. Highway includes the entire width between the property lines. Code section 321.1 (48).

■ It is true Code section 321.354 excepts school busses receiving and discharging pupils from the provisions forbidding parking a vehicle upon the paved part of a highway. This permits but does not require that school busses stop on the pavement. Nor does it mean the school children are afforded protection under the statutes only when the school bus stops upon the pavement. The statutes in question were enacted for the protection of school children and are applicable when the school bus stops any place on the highway to receive or discharge school children. In Morgan v. Carolina Coach Co., 225 N. C. 668, 36 S.E.2d 263, in which a similar statute was held applicable, the school bus was stopped on the highway a short distance from the paved portion thereof.

■ Another contention by appellant is the evidence did not show stop warning signal lights on the school bus were flashing and the stop arm was extended as required by statute. The record

does not support this contention. The testimony of the bus driver showed he habitually (always) turned on the flashing stop lights and put out the stop arm and, although he did not remember "for sure" that particular occasion, he handled them the same as always.

Tackman v. Brotherhood of American Yeoman, 132 Iowa 64, 70, 71, 106 N.W. 350, 352, 8 L. R. A., N. S., 974, quotes with approval from Greenleaf on Evidence: "A habit of doing a thing is naturally of probative value as indicating that on a particular occasion the thing was done as usual, and, if clearly shown as a definite course of action, is constantly admitted in evidence."

Smith v. Clark, 12 Iowa 32, holds evidence of defendant's custom in accepting drafts to always do so in writing, is proper, as bearing upon the question whether there was an acceptance as claimed by plaintiff.

In re Estate of Hill, 202 Iowa 1038, 1043, 208 N.W. 334, 336, quotes from 1 Wigmore on Evidence (Second Ed.), section 376, as follows: "In general, where a habit of conduct is to be evidenced by specific instances, there is no reason why they should not be resorted to for that purpose. The only conditions * * * are (a) that they should be numerous enough to base an inference of systematic conduct, and (b) that they should have occurred under substantially similar circumstances, so as to be naturally accountable for by a system only, and not as casual recurrences."

See also Wigmore on Evidence, Third Ed., section 98.

There was no evidence to the contrary. Appellant testified he did not see the school bus until he was even with it and did not observe whether the flashing lights were turned on or the stop arm was up.

It is not suggested there was any obstruction to appellant's view during the one and one-half or two miles he traveled south to the place of the collision. It was a clear day. The school bus with its flashing danger signal lights must have been visible from the north for a considerable distance. It was standing on the highway almost directly in plaintiff's line of vision. His unexplained failure to observe it amounts to nothing less than failure to maintain a proper lookout. His failure to reduce

the speed of his car, and to stop the same before meeting the school bus, violated the statutes governing such matters and constituted negligence.

II. Appellant contends the school bus was a diverting circumstance which excused his failure to maintain a lookout ahead. This contention is without merit. The school bus was standing in a proper position on the highway. Appellant did not observe it until he was even with it. Aside from its flashing lights, and signal arm, which appellant did not see, there was nothing about it to attract more than ordinary attention.

Nor does appellant's testimony support the contention now made for him. He testified merely that he had been meeting the school bus every morning and wondered why it was sitting there. That the sight of the bus stimulated this voluntary "wondering" and apparently distracted his attention from his driving does not make it a diverting circumstance, within the meaning of the rule. In the language of Dearinger v. Keller, 219 Iowa 1, 3, 257 N.W. 206, 207, "A diverting circumstance, as that term is used in this connection, must be such as reasonably and naturally arrests the attention of the party charged and suggests the necessity of some immediate attention or action on his part."

Another case in which the court refused to recognize the claim of diverting circumstance is Ege v. Born, 212 Iowa 1138, 236 N.W. 75. That is one of the relatively few cases, which involve a rear-end collision on a clear, bright day, as does the case at bar.

III. The burden of proving his freedom from contributory negligence was upon appellant. Contributory negligence means any negligence on his part which contributed in any way or in any degree directly to the injury or damage suffered by him. In this case the record is limited to the testimony of appellant and witnesses for him. The evidence and physical facts established conclusively that had.appellant maintained a proper lookout he would have observed the school bus, with its extended stop arm and flashing stop lights, at such distance that his car could have been slowed and stopped in obedience to the statutes.

However, he failed to see the school bus as he approached it and his car met it without slackening its speed. As he was passing the bus he belatedly looked at it and "wondered" about it. In

so doing he again failed to keep a lookout ahead and failed to observe that defendant's car had come to a stop on the pavement at a place, which, according to appellant, was 60 or 70 feet beyond (south of) the school bus. According to his own testimony he traveled at the rate of 50 or 55 miles per hour through the stop zone established by the school bus, and, when he observed defendant's stopped car, was unable to arrest the momentum of his own car or to avoid striking defendant's car. Some indication of the force of this impact is given by appellant's testimony that it drove defendant's car down the pavement a distance of 50 or 60 feet or more.

It is clear appellant was negligent in failing to maintain a proper lookout and in violating the statutes requiring the slowing and stopping of his car when it met the stopped school bus. It is equally clear such negligence directly contributed to the collision and to plaintiff's injury and damage therefrom. The testimony that the place of the collision was 60 or 70 feet south of the "stop" zone and that appellant was then attempting to avoid it would not excuse such negligence or make it noncontributory.

This conclusion renders unnecessary the consideration of other grounds of the motion for directed verdict.—Affirmed.

All JUSTICES concur.