# Richmond

Roy Augustus Brush v. Commonwealth of Virginia.

June 15, 1964.

Record No. 5750.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

*Henry H. Tiffany*, for the plaintiff in error.

*R. D. McIlwaine, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

I'ANSON, J., delivered the opinion of the court.

■ This is an appeal by Roy Augustus Brush, defendant, from a conviction of operating a motor vehicle while under the influence of intoxicants, in violation of § 18.1-54, as amended, Code of 1950, 1960 Repl. Vol. Defendant, having waived a jury trial, was tried by the court, and his punishment was fixed at a fine of $200 and a jail sentence of 30 days, which latter punishment was suspended upon condition of his good behavior for a period of one year. From this judgment we granted defendant a writ of error.

Defendant's principal contention is that the trial court erred in admitting evidence of the results of chemical analyses of his blood sample.

On the night of February 2, 1963, while Trooper C. W. Deyerle, accompanied by a deputy sheriff of Nelson county, was driving his motor vehicle south on route 29, a car driven north by the defendant crossed over the center line of the highway into the path of the trooper's car forcing it off the road onto the shoulder. The trooper immediately turned his vehicle around and pursued the defendant, and while following him Deyerle noticed defendant's car cross over the center line of the highway several times and force another automobile off the road onto the shoulder. When the officers stopped the defendant and told him to get out of his car, they detected a strong odor of alcohol. They also noticed that his speech was "very impaired" or "blurred" and his gait was unsteady.

Initially, defendant refused to submit to a blood test, but subsequently changed his mind and his blood was withdrawn by a qualified physician within two hours after his arrest. Trooper Deyerle testified that before the blood sample was taken the doctor told defendant that he was cleansing his arm with some substance which contained no alcohol. Although the trooper was asked at the trial what the doctor used to sterilize his equipment, the question was not answered and no evidence was presented showing that the instrument used to withdraw the blood was sterilized.

One sample of defendant's blood was given to Trooper Deyerle and forwarded by him to the office of the Chief Medical Examiner in Richmond, and the other sample was delivered to the defendant who sent it to the Lynchburg General Hospital Laboratories. An analysis of the former sample disclosed that it contained 0.19 per cent by weight of alcohol, while an analysis of the latter sample showed that it contained 0.14 per cent by weight of alcohol. Certificates

issued by the Chief Medical Examiner and the hospital laboratory showing the results of these analyses were introduced in evidence by the Commonwealth.

Defendant testified that he was not intoxicated at the time of his arrest. His explanation for crossing over the center line of the highway was that it was raining and he was having difficulty getting his defective windshield wipers to work. He was unsteady on his feet and limping because he had sprained his ankle sometime prior to the date of his arrest. Defendant's version of what occurred was generally supported by two witnesses testifying in his behalf.

Defendant first argues that because of a variance in the results of the analyses of his blood sample it was error to admit in evidence the certificates of the Chief Medical Examiner and the Lynchburg General Hospital Laboratories.

Section 18.1-55[1], as amended, Code of 1950, 1960 Repl. Vol., 1962 Supp., commonly known as the "implied consent statute," insofar as pertinent here, provides:

"(c) [A] physician, * * * using some type of a cleanser or sterilizer for the instruments used and for the part of the body from which the blood is taken, other than alcohol or other substance which might in any way affect the accuracy of the test, shall withdraw blood for the purpose of determining the alcoholic content therein * * *. Upon completion of taking of the sample, * * * one sample shall then be delivered by the person who withdrew it to the police officer for transporting or mailing to the Chief Medical Examiner; and the other sample shall be delivered to the person accused, * * * [who] shall deliver by transporting or by mailing the same to a laboratory supervised by a pathologist or a laboratory approved by the State Health Commissioner * * *. [T]he Chief Medical Examiner shall cause it to be examined for alcoholic content * * * [and] upon completion of such examination shall execute a certificate * * * [showing] the alcoholic content of the sample. * * * [A]nd *the certificate attached to the container forwarded by or on behalf of the accused shall* be returned to the clerk of the court in which the matter will be heard, and such certificate shall be *admissible in evidence when attested by the pathologist or by the supervisor of the laboratory approved by the State Health Commissioner*." (Italics supplied.)

Code § 18.1-56, as amended, provides that the report of an analysis of an accused's blood sample by the office of the Chief Medical

---

[1] § 18.1-55 was repealed by the 1964 Acts of Assembly and § 18.1-55.1 was enacted in lieu thereof, effective July 1, 1964.

Examiner, when properly attested, shall likewise be admissible in evidence.

Code § 18.1-57, as amended, which is incorporated by reference in the implied consent law, provides in part that in any prosecution for violation of § 18.1-54 "the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of the accused's blood in accordance with the provisions of § 18.1-55 [the implied consent statute] shall give rise to the following presumptions:

"(1) If there was at that time 0.05 per cent or less by weight of alcohol in the accused's blood, it shall be presumed that the accused was not under the influence of alcoholic intoxicants;

"(2) If there was at that time in excess of 0.05 per cent but less than 0.15 per cent by weight of alcohol in the accused's blood, such facts shall not give rise to any presumption that the accused was or was not under the influence of alcoholic intoxicants, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused;

"(3) If there was at that time 0.15 per cent or more by weight of alcohol in the accused's blood, it shall be presumed that the accused was under the influence of alcoholic intoxicants."

Code §§ 18.1-55(c) and 18.1-56 are the only statutes dealing with the admissibility of certificates showing the results of blood analyses. Although the legislature must have been fully aware that there may be some variance in the results of the two tests made under different conditions, there is no language in these statutes limiting the admissibility of the certificates when such a variance exists. If the statutory procedure has been strictly complied with, the variance shown by the certificates would simply go to their weight, not to their admissibility.

Since both certificates are admissible, the presumption of intoxication raised by the 0.19 per cent result, which was shown by the certificate of the Chief Medical Examiner, would be rebutted by the 0.14 per cent result. However, these certificates may be considered by the trier of fact along with all the other evidence in determining whether the accused was under the influence of intoxicants. See Note, 49 Va. L. Rev. 386, 402. Hence defendant's contention that the variance in the results of the tests rendered the certificates inadmissible is without merit.

Defendant next argues that the Commonwealth had the burden of proving compliance with the procedure set forth in § 18.1-55(c)

before the results of the analyses could be admitted in evidence. He says that the Commonwealth failed to lay the proper foundation for the admissibility of the certificates showing the results of the blood analyses because there was no evidence that the instrument used by the doctor to extract blood from the defendant's arm was sterilized.

On the other hand, the Commonwealth says that the burden is not on it to show that the instrument used was cleansed or sterilized with a substance other than alcohol which would not affect the results of the tests, because there is a presumption that public officers have properly discharged their duties and faithfully performed those matters with which they are charged. See *Fleming* v. *Commonwealth*, 191 Va. 288, 293, 61 S. E. 2d 1, 3; *Benson* v. *City of Norfolk*, 163 Va. 1037, 1040-1041, 177 S. E. 222, 224; 20 Am. Jur., Evidence, § 170, pp. 174-175, § 173, p. 180.

Although the authorities cited by the Commonwealth support this principle, it has no application under the facts of this case because the doctor who extracted defendant's blood was not a public officer. Moreover, to indulge in the presumption that the doctor sterilized the instrument which he used to extract a blood sample, when an analysis of the sample may create certain presumptions under Code § 18.1-57, is to base one presumption upon another to establish defendant's guilt. A presumption must rest upon direct evidence and cannot be based upon or inferred from another presumption. 20 Am. Jur., Evidence, § 164, p. 168.

Under the requirements of Code § 18.1-55(c), it must be shown that some type of cleanser or sterilizer other than alcohol or other substance which might in any way affect the accuracy of a blood analysis was employed to sterilize the instrument used to withdraw the blood. *Kyhl* v. *Commonwealth*, 205 Va. 240, 135 S. E. 2d 768 (decided April 27, 1964).

In the present case there is no evidence that the instrument used by the doctor to withdraw defendant's blood was sterilized. A lack of sterilization could well have been a factor in producing the variance in the results of the chemical analyses because the instrument used is an integral part of the testing process. Reasonable proof that this instrument was properly sterilized is essential in establishing the reliability of the test itself.

In the absence of proof showing that the instrument used to withdraw defendant's blood was sterilized pursuant to the requirements of § 18.1-55(c) the Commonwealth has not met the burden imposed upon it, and the certificates setting forth the alcoholic content of

defendant's blood were not admissible. *Kyhl* v. *Commonwealth, supra.* See *Lutz* v. *City of Richmond,* 205 Va. 93, 97, 135 S. E. 2d 156, 159.

Code § 18.1-55 (f) provides that if the result of a chemical analysis of a blood sample is not received in evidence for any reason whatever, "including but not limited to the failure on the part of any person, except the person arrested, to comply strictly with every provision of this section, then the rights of the person arrested shall be deemed to have been prejudiced, and he shall be found not guilty" of the offense of operating a motor vehicle under the influence of intoxicants. Hence, defendant's conviction cannot be upheld.

For the reasons stated, the judgment of the court below is reversed and the case is dismissed.

*Reversed and dismissed.*