**STATE of Iowa, Appellee,**

v.

**Marvin Lee SHELTON, Appellant.**

**No. 53367.**

Supreme Court of Iowa.

April 7, 1970.

------◆------

Stanford L. Trumbower, Des Moines, for appellant.

Richard F. Turner, Atty. Gen., William H. Garretson, Asst. Atty. Gen., Charles Vanderbur, County Atty., and William E. Gibbons, Asst. County Atty., for appellee.

STUART, Justice.

An Ames Municipal Court jury convicted defendant of operating a motor vehicle while intoxicated in violation of section 321.281, 1966 Code of Iowa. He has appealed from the judgment entered on the verdict alleging four errors based on the claim that the foundation testimony for the admission of the blood test was not sufficient to make the test admissible.

I. The withdrawal of blood from the body of a person accused of a crime for use as evidence in proving the crime is a serious matter, although such procedure has been held constitutional. Schmerber v. State of California (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; State v. Johnson (1966), 259 Iowa 599, 602, 145 N.W.2d 8, 10. The legislature in recognition of this fact imposed certain require-ments which must be met before the results of the test can be used as evidence. Section 321B.4.

We enumerated the requirements in Lessenhop v. Norton (1967), Iowa, 153 N.W.2d 107, 111, 112. Before any result of a blood test analysis can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission by showing "(1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons whose supervision the tests were conducted be established."

Defendant claims the foundation here was deficient because there was no evidence: (a) the blood was taken from the particular identified body of defendant, (b) the nurse had been designated to take blood by a licensed physician, or (c) the syringe was sterile, factory wrapped or "anything of this nature".

We will examine these charges in the light of the pertinent evidence.

Defendant was arrested for O.M.V.I. in Ames by Officer Grosvenor. He was advised of his constitutional rights and was taken to the police station. After defendant consented to a blood test, Grosvenor put a small sealed bottle used for blood samples in his pocket and took defendant to the hospital, where Mrs. Judge, a registered nurse, withdrew blood from his arm in Grosvenor's presence. He took the sample to the home of Mr. Baughman, director of the bioassay division of Pharmatox Laboratories at about 3:45 a. m. Mr. Baughman took the sample to the laboratory

the same morning and performed the blood test which registered 182 milligrams of alcohol per hundred millileters of blood.

Mrs. Judge could not identify defendant but testified without objection that the hospital records disclosed she withdrew a blood sample from Marvin Lee Shelton. There was only one Marvin Lee Shelton registered at the hospital that day. Although she had no recollection of this particular incident, she testified she had withdrawn blood samples for 19 years at the hospital and always withdrew blood in the same manner. She described the procedure as follows:

"We washed the arm with aquous solution of zephrine and used a disposable syringe to withdraw the blood and put it into a bottle the officer has. It is a sealed bottle. The seal is broken and we put the blood in it and he reseals it with a wax. This is done in my presence. There is no alcohol used in this procedure."

■ (a) There was abundant evidence the blood sample was taken from defendant. Officer Grosvenor supplied the bottle, saw the blood taken from defendant and put into the bottle. He delivered the sample to the person who performed the test. Mrs. Judge could not identify defendant but testified the hospital records showed she withdrew blood from only one Marvin Lee Shelton on the day in question. There is no merit to defendant's first contention.

■ (b) There was no direct evidence Mrs. Judge had been designated to take blood by a licensed physician. Such inference would have to be drawn from the evidence that she had taken many blood samples during 19 years as a nurse. We would also have to assume she could not have taken any blood samples without having been designated to do so by a licensed physician.

(c) The syringe used to withdraw defendant's blood was described as a "disposable syringe". In order to hold the foundation sufficient in this respect we would have to assume it was factory wrapped or sterile or both.

We do not believe we can make the necessary assumptions. In State v. Charlson (1967), Iowa, 154 N.W.2d 829, 835, in holding literal compliance with certain technical requirements of section 321B.4 was not necessary in order to constitute substantial compliance with the legislative intent, we said:

"It is obvious the purpose of the quoted provision, together with the further language of 321B.4, 'kept under strictly sanitary and sterile conditions', is to assure, so far as reasonably possible, accuracy and reliability of the test and minimize danger of infection to the person undergoing it. Where, as here, there is undisputed proof the syringe used is sterile this purpose seems to be served as fully as if the equipment were new and factory wrapped, perhaps even more so."

The failure to prove Mrs. Judge was a properly designated nurse and the sterile condition of the needle and syringe go directly to these basic protections referred to in Charlson.

The foundation requirements should not be difficult to establish. It would not serve the cause of justice for us to make extended inferences to correct a faulty foundation and thereby dilute the statutory protection afforded defendant. We hold the evidence failed to establish the nurse had been designated to withdraw blood by a licensed physician and failed to establish the syringe used complied with the statutory requirements.

II. Defendant claims the record affirmatively shows the nurse did not recall specifically withdrawing the blood from defendant or the procedure she used in so doing at that particular time and the test was therefore inadmissible. It is neither realistic nor practical to require specific recall of this particular incident. It would be impossible for her to do so for each sample of blood withdrawn. The hospital records show she withdrew blood from this

defendant. She described the procedure used and testified she performed the tests in the same manner every time. This evidence was admissible and would have been sufficient if the description of the procedure had included all the statutory requirements.

In Barrick v. Smith (1957), 248 Iowa 195, 200, 80 N.W.2d 326, 329, "[t]he testimony of the bus driver showed he habitually (always) turned on the flashing stop lights and put out the stop arm and, although he did not remember 'for sure' that particular occasion, he handled them the same as always." We held this was sufficient evidence to support a finding the lights were flashing and the stop arm out. We quoted with approval from Tackman v. Brotherhood of American Yeoman (1906) 132 Iowa 64, 70, 71, 106 N.W. 350, 352, 8 L.R.A.,N.S., 974, which in turn quoted from Greenleaf on Evidence: "A habit of doing a thing is naturally of probative value as indicating that on a particular occasion the thing was done as usual, and, if clearly shown as a definite course of action, is constantly admitted in evidence."

III. Defendant filed a record containing a summary of the evidence in the whole trial. In view of the limited questions presented on appeal such extensive record was not necessary and served only to increase the costs and burden the court with unnecessary reading matter. Parties should strive to limit the record to that reasonably pertinent to the appeal.

For the reasons stated in Division I, the case is reversed and remanded for further proceedings in accordance herewith.

Reversed and remanded.

MOORE, C. J., and MASON, RAWLINGS, BECKER, LeGRAND and REES, JJ., concur.

LARSON, J., dissents.

UHLENHOPP, J., takes no part.

LARSON, Justice (dissenting):

The majority finds reversible error because (1) there was no direct evidence Mrs. Judge had been designated to take blood by a licensed physician, and that the evidence she had been taking blood samples at the hospital for over 19 years as a registered nurse did not raise a permissible inference that she was so designated, and (2) the description of the syringe used to withdraw defendant's blood as a "disposable syringe" did not raise a permissible inference that it was factory-wrapped or sterile. I cannot agree. To so hold carries the foundation requirements we have announced to an extent never intended. The sole purpose of these requirements is to insure the correctness of the blood test analysis before it can be admitted in any civil or criminal case. From the evidence introduced I have no difficulty in finding a permissible inference that Mrs. Judge was a properly-designated person to take blood from the defendant, and that the requirement that the syringe used was factory-wrapped and sterile by the description "disposable syringe" was adequate. It is unreasonable to require stereotyped phrases to sufficiently meet these foundation requirements, in my opinion. I would affirm.