STATE of Iowa, Appellee,

v.

Edward Wayne DON, Appellant.

No. 65616.

Supreme Court of Iowa.

April 21, 1982.

Rehearing Denied May 14, 1982.

Mark S. Soldat of Soldat & Braunschweig, Algona, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., Glenn M. Bradley, County Atty., and David Dutton, Asst. County Atty., for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

McCORMICK, Justice.

Defendant Edward Wayne Don appeals from his conviction by jury and sentence for first degree murder in violation of section 690.1, The Code 1975. The charge arose from the June 11, 1976, shooting death of Keota night marshal Douglas Bell. Although defendant challenges his conviction on twelve grounds, we find he has demonstrated no basis for reversal. We affirm the trial court.

The State's evidence was that officer Bell warned defendant on two separate occasions concerning traffic violations shortly after 1:00 a. m. on June 11, 1976. Subsequent to those incidents, according to the State's theory, defendant stole a red Vega automobile from a used car lot. Bell observed him speeding at about 2:30 a. m. and pursued him out of town. Defendant stopped, and Bell started to write a speed-

ing ticket. At that point defendant was afraid Bell would discover he was driving a stolen car. He noticed Bell's holster was unlatched. He grabbed Bell's pistol and shot him with it. After emptying the gun, he reloaded and shot Bell several more times. He then kicked the officer's face with his boot. Following the killing, he drove into town and committed break-ins in an effort to construct an alibi.

At trial, defendant was represented by William Kutmus and Mark Pennington. After, his conviction, on the day set for sentencing, he sought unsuccessfully to have present counsel appointed to represent him in their stead. He has been represented by his present attorney throughout the appeal.

He contends the trial court erred in requiring the case to be tried under the procedural provisions of the new criminal code, failing to appoint an investigator to assist his defense, refusing his request to attend depositions, overruling his motion to suppress boots seized in a search of his father's home, receiving the boots in evidence, allowing testimony concerning the time it would take to drive from the crime scene to Keota, overruling objections to evidence of his habit of exaggerating, permitting the State to offer prior statements of a prosecution witness, overruling his objection to testimony of a rebuttal witness who violated a sequestration order, receiving hearsay testimony, holding the evidence was sufficient for conviction of first degree murder, and depriving him of his right to counsel.

■ I. *Applicability of the procedural provisions of the new code.* Because the offense charged in this case occurred before January 1, 1978, the procedural provisions of the revised criminal code were inapplicable unless defendant requested and the court approved their use. § 801.5(1), The Code 1979. The record shows the court may have applied the new provisions based on a finding defendant impliedly elected to use them by filing a pretrial motion under one of the rules. *See State v. Kantaris*, 280 N.W.2d 389, 393 (Iowa 1979). Assuming, without deciding, that the court erred in applying the new rules, the record shows defendant suffered no harm through their use.

He complains he was prejudiced because he was compelled to give reciprocal discovery under Iowa R.Crim.P. 12 and 13 and because the jury was permitted to take notes pursuant to rule 18(5)(e). The only reciprocal discovery he was compelled to provide was a list of defense witnesses expected to be called at trial. *See* rule 12(3). Defense subpoenas had been ordered for most, if not all, of those witnesses before the disclosure, and they were witnesses the State knew about. Defendant could not have been harmed by having to disclose information the State could readily obtain through other means. Nor, even assuming jurors did not have the right to take notes before adoption of rule 18(5)(e), does the record show defendant suffered any detriment from juror notetaking.

■ II. *Appointment of an investigator.* The record contains a motion by defendant for appointment of an investigator but does not show any ruling or failure of the court to rule after request for ruling. Therefore no error has been preserved on this issue. *State v. Schiernbeck*, 203 N.W.2d 546, 547 (Iowa 1973).

■ III. *Defendant's presence at depositions.* On April 9, 1980, the trial court conducted a hearing on various pretrial motions. During the proceeding, defense counsel notified the court that defendant, who was present, wished to remain with his attorney while depositions of various department of criminal investigation (DCI) agents were taken. Upon the State's resistance on security grounds, the court denied defendant's request. In contending the court erred, defendant relies on his right to confront witnesses under U.S. Const.amend. VI and XIV. He did not urge a constitutional basis for his presence in the trial court and cannot do so for the first time here. Moreover, we have no occasion to decide under this record whether a deposition is a stage of trial for purposes of Iowa R.Crim.P. 25(1).

The issue of a defendant's right to be present at depositions has been addressed in other jurisdictions with varying results. *See United States v. Benfield*, 593 F.2d 815 (8th Cir. 1979); *State v. Dolen*, 390 So.2d 407 (Fla.Ct.App.1980); *Chapman v. State*, 302 So.2d 136 (Fla.Ct.App.1974); *Bowen v. State*, 263 Ind. 558, 334 N.E.2d 691 (1975); *Collins v. State*, 12 Md.App. 239, 278 A.2d 311 (1971), *affirmed* 265 Md. 70, 288 A.2d 163 (1972). In the present case, it appears only one State deposition was used against defendant at trial, and it was taken April 8, 1980, the day before defendant requested to be present at depositions. Thus no deposition taken subsequent to defendant's request was used against him, and he personally confronted all the witnesses except the one whose deposition was taken before his request. Courts that have decided the confrontation issue have treated such circumstances as significant. *See, e.g., Benfield*, 593 F.2d at 821; *Dolen*, 390 So.2d at 409. Because error was not preserved, we do not decide the issue here.

■ IV. *The search and seizure issue.* At the time of the offense, defendant, then 19 years old, resided in the Keota home of his father. He occupied a room in the basement. With the consent of defendant's father, the sheriff and a DCI agent searched defendant's room during the evening of the day of the offense and seized a pair of boots found in his closet. Defendant filed a pretrial motion to suppress the evidence which, after hearing, the trial court overruled.

Defendant attacks the ruling on two grounds. He alleges his father lacked authority to consent to a search of his living quarters, and he alleges the seizure required separate justification that was also lacking.

The father's authority to consent depends on whether he had common authority over defendant's living area. Such authority stems from "mutual use of the property by persons generally having joint access or control for most purposes." *United States v. Matlock*, 415 U.S. 164, 170–71, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974). The

father never went to the basement because of knee problems, but he owned the home and insisted no one could keep him out of any part of it. Defendant did not pay rent and occupied the home as an ordinary family member. In these circumstances, we find that defendant's father had authority to consent to the search of defendant's room. *See State v. Kelly*, 284 N.W.2d 236, 238 (Iowa 1979); 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.4 at 733 (1978).

■ We believe the seizure was also justified. Defendant was a suspect in the break-ins and the murder. The officers wished to obtain the boots he wore in order to examine them for mud and broken glass that might tie defendant to the break-ins. Thus the boots were "evidence" that legitimately were subject to seizure under principles delineated in *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 300–10, 87 S.Ct. 1642, 1646–51, 18 L.Ed.2d 782, 788–94 (1967). When officers find evidence they are lawfully searching for, they are entitled to seize it. *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684, 693 (1969). The situation is to be distinguished from the line of cases applying the doctrine of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The *Coolidge* doctrine, like the one involved here, may concern a seizure of evidence while a search is in progress. *See State v. Dickerson*, 313 N.W.2d 526, 531 (Iowa 1981). The difference, however, is that the *Coolidge* rationale applies to seizure of incriminating items that officers come across inadvertently during an otherwise justified intrusion. For example, a *Coolidge* situation would have arisen in the present case if the officers, while engaged in the search for the boots, came across another incriminating item for which they had not been searching. *See Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583.

Because the search here was lawful and the boots were a proper subject of seizure, the seizure was justified. *See United States v. Wright*, 564 F.2d 785, 790 (8th Cir. 1977); *Maxwell v. Stephens*, 348 F.2d 325,

336–38 (8th Cir.), *cert. denied*, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965); *People v. Chism*, 390 Mich. 104, 128–40, 211 N.W.2d 193, 201–10 (1973).

The trial court did not err in overruling the motion to suppress.

■ V. *Admissibility of the boots.* At trial defendant objected to admissibility of the boots on the ground of "insufficient foundation linking these boots to any of the relevant issues in the case." The court overruled the objection. In challenging this ruling defendant relies on a chain of custody ground raised in a pretrial motion in limine and the relevancy ground. We find that his general objection at trial to the foundation for the exhibit was inadequate to preserve error on the chain of custody ground. *See State v. Welsh*, 245 N.W.2d 290, 295 (Iowa 1976); *State v. Lunsford*, 204 N.W.2d 613, 616 (Iowa 1973). The motion in limine did not preserve the issue. *See State v. Mark*, 286 N.W.2d 396, 410 (Iowa 1979).

■ Moreover, we find no merit in defendant's relevancy challenge. Evidence was adduced that the victim had been kicked in the head after the shooting. A witness testified defendant told him he shot the officer and then kicked him in the face with his "old black" steel-toed shoes, getting blood on them that he later tried to wash off. The boots were old, black and steel-toed. Analysis showed one of them contained blood spots, although it could not be ascertained whether it was human blood. Under this record, the trial court did not abuse its discretion in overruling defendant's relevancy objection.

VI. *The driving experiment.* At trial, the State introduced evidence concerning an experiment showing how long it took an officer to drive a car, within the speed limit, from the crime scene to downtown Keota where the break-ins occurred. The elapsed time was five minutes and forty-eight seconds. A witness said a vehicle left the scene at approximately 2:46 a. m., and the purpose of the evidence was to show defendant could have committed the murder and still have arrived in Keota in time to commit the break-ins that occurred at approximately 3:00 a. m.

■ Defendant objected to the evidence on the ground of an absence of showing of similar conditions. The State, however, was merely attempting to demonstrate a possibility to negate defendant's alibi. It was not attempting to prove defendant actually drove the distance in the same amount of time. Therefore it was not necessary to show similarity of conditions. *See* C. McCormick, *Law of Evidence* § 202 at 486 (2d ed. E. Cleary 1972). The court did not abuse its discretion in overruling defendant's objection.

VII. *Evidence of defendant's habits.* One of the State's witnesses was LuAnn Tinker, who testified that defendant told her he killed officer Bell. On cross-examination, defense counsel asked her whether defendant was exaggerative and told her he committed other crimes. The State objected on the ground the evidence was not relevant character testimony, and the objections were sustained. In an offer of proof, defense counsel offered deposition testimony of Tinker in which she said defendant bragged about breaking the law, lied to her once about his boss letting him use his car, and made excuses for failing to keep appointments with her. She said that, as a result, she wasn't sure whether she believed defendant when he told her he murdered the officer.

Tinker was permitted to testify that defendant was immature, an "attention getter," "kind of a baby," and would "beg for attention." She also said he would test her to see if she would remain true to him no matter what he said or did. Her testimony included this exchange:

Q. Going back to the testing right now, all right, and you stated, did you not, that he tests you? A. Yes.

Q. And he says things, awful things, let's say, as a method of testing you to see whether or not you'd remain true to him or loyal, is that correct? ... A. Yes.

Defendant now asserts that the excluded evidence showed defendant may have been lying when he told Tinker he murdered Bell.

A distinction has been made between evidence of habit and evidence of character. *See* Fed.R.Evid. 405 Advisory Committee Note. Defendant contends the excluded evidence should have been admitted as evidence of habit, "a regular practice of meeting a particular kind of situation with a specific type of conduct." *See* C. McCormick, *supra*, § 195 at 462–63. Evidence of habit is admissible to show that a person is likely to have acted on a particular occasion in conformity with that habit. *Barrick v. Smith*, 248 Iowa 195, 200, 80 N.W.2d 326, 329 (1957).

Assuming the proffered evidence was admissible as evidence of habit, we find no substantial difference between the evidence that was admitted and the evidence that was excluded. Tinker did not say defendant ever exaggerated or lied to her about committing crimes, and the idea that Tinker doubted his credibility because of his boasting and lying about other things is of doubtful value in demonstrating a habit of lying about criminal activity. We find no abuse of discretion in the court's ruling, and we have no occasion to determine whether the evidence would be admissible as bearing on a relevant trait of defendant's character.

VIII. *Use of the prior statement of a witness.* During cross-examination of a State witness, defense counsel introduced, over prosecution objections, some of the witness' statements in a tape-recorded interview with police. As the State contended, the statements were not impeaching because they were not inconsistent with the witness' testimony on direct examination. They were, however, in some respects inconsistent with the State's theory of the case. On redirect examination, the State was permitted over defense objections to read other portions of the interview transcript that were consistent with the witness' direct testimony and the State's theory of the case.

This was plainly a situation of curative admissibility, and the trial court did not abuse its discretion in admitting the State's evidence on redirect. *See State v. Pepples*, 250 N.W.2d 390, 393–94 (Iowa 1977).

IX. *Violation of the sequestration order.* The State called a rebuttal witness who had been present in the courtroom during earlier testimony despite a witness sequestration order. The witness did not testify to matters directly covered by earlier testimony, and no basis exists for finding her testimony was affected by violation of the order. The trial court did not abuse its discretion in overruling the defense objection to her testimony. *See State v. Pierce*, 287 N.W.2d 570, 575 (Iowa 1980).

X. *Admitting alleged hearsay evidence.* A DCI agent was permitted to testify over a defense hearsay objection that he was unable to find any evidence to contradict the alibi defense of David Fagen, a person who was earlier charged, tried and acquitted on a charge of murdering Bell. Under principles delineated in *State v. Kern*, 307 N.W.2d 22, 26 (Iowa 1981), such negative testimony is not hearsay. Therefore the court did not err in overruling defendant's objection.

XI. *Sufficiency of evidence of first degree murder.* Defendant contends the evidence was insufficient on the first degree murder elements of premeditation, deliberation and specific intent to kill. He also challenges the sufficiency of evidence of malice aforethought. He preserved error on this contention through various motions at trial, all of which were overruled.

The sufficiency of evidence standard is discussed in *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981), and *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). Alternative ways to prove the mental elements of first degree murder are explained in *State v. Harrington*, 284 N.W.2d 244, 247–48 (Iowa 1979). We do not recognize any distinction in probative force between direct and circumstantial evidence. *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979). Furthermore, we reject defendant's

argument that an accused cannot be guilty of first degree murder when he does not bring the murder weapon to the scene. *See State v. Pletka*, 310 N.W.2d 525, 529–30 (Iowa 1981).

 Considering all the evidence in the present case, we conclude it was sufficient for a rational trier of fact to find defendant guilty of first degree murder.

XII. *Denial of the right to counsel.* Defendant contends he was denied his right to counsel under U.S.Const.amend. VI when the trial court refused to let him substitute present counsel for trial counsel on the day he was sentenced. He also contends he was denied effective assistance of counsel at trial.

 He did not urge his sixth amendment claim when he sought substitution of counsel at trial. Therefore he did not preserve error on that contention, and we do not reach it. Nor do we have occasion to comment on an ethical question raised by the State and trial court concerning the conduct of attorney Soldat, who is Kossuth County Attorney, in representing a defendant in a criminal case. The alleged ethical violation is an issue that should be considered by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association in accordance with Court Rule 118. It does not relate to the merits of the present appeal.

 Because of the nature of an ineffective assistance of counsel claim, it was not necessary for defendant to make that claim in the trial court. This is a case, however, when the record is insufficient to permit a decision on the merits of that issue. If he wishes to pursue it, he must do so by postconviction action. *See State v. Steltzer*, 288 N.W.2d 557, 560 (Iowa 1980).

We have considered all of defendant's contentions and arguments, whether expressly addressed or not, and find them without merit.

AFFIRMED.