**STATE of Missouri, Respondent,**

v.

**Jerome E. SETTER, Appellant.**

**No. WD 40265.**

Missouri Court of Appeals, Western District.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1988.

As Modified Dec. 27, 1988.

Application to Transfer Denied Feb. 14, 1989.

John E. Redmond, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before COVINGTON, J., Presiding, and NUGENT and GAITAN, JJ.

COVINGTON, Judge.

This is an appeal by defendant Jerome E. Setter from his conviction of the crime of involuntary manslaughter § 565.024.2, RSMo 1986.

Setter was the driver of a pickup truck which was involved in an accident on May 9, 1985, sometime after 1:00 a.m. Officer Jarrett Jones arrived at the scene of the accident near 51st Street and Noland Road in Independence at approximately 1:35 a.m. The driver of another pickup truck with which Setter's vehicle collided died from injuries suffered in the crash. Setter was taken to St. Luke's Hospital in Kansas City. At the direction of Officer Jones, Dr.

Sally Moot withdrew a blood specimen from Setter at approximately 3:50 that morning. The blood was initially tested on May 17, 1985. The test reading was 0.18. On August 13, 1987, a second test was conducted on the same sample of blood. This test reading was 0.16.

Before trial the defendant sought to suppress the test results. The motion to suppress was taken with the case and was ultimately overruled, as was defendant's timely objection at trial to the evidentiary foundation of the blood test on the ground that the state did not establish that the needle used to withdraw blood was previously unused and sterile.

Defendant was found guilty by the jury and sentenced to a term of imprisonment of three years.

On appeal the defendant contends that there was insufficient evidence to support his conviction. He further asserts trial court error in admission of evidence concerning the test results of the alcohol content of his blood. Among other attacks on the admission of the results of the tests, Setter contends the state's foundational showing prior to the admission of blood test results was inadequate. The defendant's contention in this regard is correct and the issue is dispositive. The conviction must be reversed and remanded.

Defendant's blood was taken pursuant to Missouri's implied consent law, § 577.020, RSMo 1986, which provides that blood samples must be drawn according to § 577.029, RSMo 1986, which states:

A licensed physician, registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcohol content of the blood.... Blood may be withdrawn only by such medical personnel.... In withdrawing blood for the purpose of determining the alcohol content thereof, *only a previously unused and sterile needle* and sterile vessel shall be utilized and the withdrawal shall otherwise be in strict accord with accept-

ed medical practices. A nonalcoholic antiseptic shall be used for cleansing the skin prior to venapuncture.

(Emphasis added.)[1]

Although the issue of the state's burden of showing compliance with foundational requirements of § 577.029 has not been directly addressed previously in Missouri, other jurisdictions have consistently held that absolute and literal compliance with the technical requirements of similar statutes and regulations is necessary. *See* Annotation, *Necessity and Sufficiency of Proof that Tests of Blood Alcohol Concentration Were Conducted in Conformance with Prescribed Methods*, 96 A.L.R.3d 745 (1980).

In *State v. Shelton*, 176 N.W.2d 159 (Iowa 1970), the implied consent statute required that syringes be kept under strictly sanitary and sterile conditions. A nurse testified that a "disposable syringe" was used. The court stated that to hold the foundation for admissibility sufficient would require the court to assume that the syringe was factory-wrapped or sterile or both, assumptions which the court could not make. The requirement of a sterile syringe "is to assure, so far as reasonably possible, accuracy and reliability of the test and minimize danger of infection to the person undergoing it." *Id.* at 161. The court reasoned that the foundation requirements were not difficult to establish and that it would not serve the cause of justice for the court to make extended inferences to correct a faulty foundation and thereby dilute the statutory protection afforded the defendant. *Id.* See also *State v. DeBerg*, 288 N.W.2d 348, 350 (Iowa 1980) (requiring literal, rather than substantial, compliance with statutory requirements).[2]

In *Brush v. Commonwealth*, 205 Va. 312, 136 S.E.2d 864 (1964), the implied consent statute required that a sterilizer be used for the instrument employed in the withdrawal of the blood. In holding that use of a sterilizer must be shown, the court noted that a lack of sterilization could be a factor in producing a variance in results and that reasonable proof that the instrument was properly sterilized was essential in establishing the reliability of the test. *Id.*, 136 S.E.2d at 867. The court concluded that, in the absence of showing that the instrument used to withdraw blood was sterilized, the prosecution had not met its burden of proof. *Id.* 136 S.E.2d at 868.

In the present case, the state's examination of Officer Jones, at whose request the blood sample was drawn, contains no question regarding the needle. The state also failed to inquire in any manner of Dr. Moot, who drew the defendant's blood, regarding the needle used in the procedure. The record does not disclose any testimony whatsoever regarding use of a previously unused and sterile needle.

The state concedes the utter absence of evidence regarding the needle. The state nevertheless argues that proof of a sterile needle was not essential to establish a proper foundation for the admissibility of the blood test results. The state contends that from the hospital setting in which the blood sample was drawn and the testimony of Officer Jones and Dr. Moot concerning the use of a sterile syringe the court may infer that a sterile needle was used. Under the literal requirements of the statute, however, such assumptions may not be made.

---

**1.** Section 577.026, RSMo 1986, requires that chemical tests of a person's blood "to be considered valid … *shall* be performed according to methods and devices approved by the state division of health." (Emphasis added.) When Setter's blood was drawn in 1985, no applicable regulation had been promulgated; § 577.029, however, which outlined the procedures to be followed, was in effect. The Missouri Division of Health's subsequent adoption of 19 C.S.R. 20–30.070 (1988), which provides that blood samples must be taken in accordance with the provisions of § 577.029, reiterates the emphasis placed upon the required procedures.

**2.** *Contra State v. Langlet*, 283 N.W.2d 330, 336 (Iowa 1979) (citing, but not distinguishing, *State v. Shelton*, 176 N.W.2d 159 (Iowa 1970), and, without explanation, holding that foundational requirements for sterile needle were met when evidence was that a sealed packet contained the syringe, that the contents of the packet were sterile, that the seal had not been broken prior to use, and that the instrument was sterile).

The state further argues that the court should overlook "mere technicalities" in the admission of evidence. For example, in establishing a chain of custody, the state asserts, there is no requirement that the state account for hand-to-hand custody; rather, the evidence is sufficient if there is "reasonable assurance" that the evidence was in the same condition as when it was received. *State v. Branscomb*, 638 S.W.2d 306, 308 (Mo.App.1982). The trial judge has discretion in determining what constitutes a proper foundation for the evidence presented through a chain of custody. *State v. Sherrill*, 657 S.W.2d 731, 736 (Mo. App.1983). A possible variation in the condition of the blood after it was taken, however, is not at issue here; circumstances surrounding the taking of the blood are at issue. Where the legislature has detailed specifically the requirements for the taking of the blood, the trial court has no discretion, and the analogy to a chain of custody analysis must fail.

The state also analogizes the admissibility of blood test results to that of breathalyzer results. In laying the foundation for the admission of breathalyzer results, the state need not show that the machine was working properly unless there has been evidence suggesting a malfunction. *State v. Powell*, 618 S.W.2d 47, 49 (Mo.App.1981). The state contends that, absent evidence that a sterile needle had not been used in withdrawing the blood sample, the state should not be required affirmatively to establish the evidence.

In support of its position, the state cites *State v. Bush*, 595 S.W.2d 386 (Mo.App. 1980), for the proposition that, while it is incumbent on the state, where the results of a breath test for blood alcohol are offered, to show that the method of testing has been approved by the Division of Health, the regulations as such and the officer's particular familiarity with them need not be proven in every case. *Id.* at 388. The state has confused two separate analyses made by the *Bush* court. One analysis concerned the adequacy of the evidence in establishing the officer's compliance with the regulations governing the administration of the test. In *Bush* the officer testified at trial that he had followed the procedure outlined in a checklist supplied by the Division of Health. The checklist used by the officer in testing the defendant was received into evidence upon the officer's testimony that the list reflected the actual procedure he had followed. *Id.* at 388. While the court stated that the regulations and the officer's familiarity with them need not be proven in every case, it held that the introduction into evidence of a checklist approved by the Division of Health, along with testimony that the procedures there defined were followed, provided a sufficient foundation for introduction of the test results into evidence. Thus, *Bush* does not stand for the proposition that the procedures in conducting the test need not be proven.

The second issue in *Bush* concerned the presumption of a properly functioning breathalyzer. "[W]hen operated by one certified as competent to use it and when the test is administered *in accordance with operational regulations promulgated by the Division of Health*, a prima facie case for introduction of the test results is made." *Id.* at 389. (emphasis added). The court in *Bush* stated: "[R]eliability of the device is the support on which the entire structure of the test result value depends." *Id.*

Here, there is no evidence to show compliance, even within the reasoning of *Bush.* There is no testimony that the physician followed the procedures set forth in § 577.029. There was no checklist used, therefore, no list to be admitted into evidence. Thus, there is no evidence available by which this court may find, under *Bush*, that the state made a prima facie case for introduction of the test results.

The legislature has required that only previously unused and sterile needles be used in the withdrawing of blood for the purpose of determining alcohol content. The requirement is clear and is not difficult to meet. Because no such evidence was adduced in this case, this court is constrained to hold that the trial court erred in admitting into evidence the results of Setter's blood test. The defendant's convic-

tion must, therefore, be reversed and the cause remanded, under *State v. Wood,* 596 S.W.2d 394 (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), for a new trial.

All concur.