# IN THE SUPREME COURT OF IOWA

No. 19–1162

Submitted April 14, 2021—Filed May 7, 2021

**MATTHEW HOLMES,**

    Appellant,

vs.

**MIRANDA POMEROY,**

    Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Warren County, Michael Jacobsen, Judge.

Plaintiff seeks further review of a court of appeals decision affirming the judgment on a jury verdict for the defendant in a personal injury action. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

J. Scott Bardole of Andersen & Associates, West Des Moines, for appellee.

**CHRISTENSEN, Chief Justice.**

In this case, we consider whether approximately twenty instances of the defendant's cell phone use while in a vehicle over an approximately three-year period is admissible to show a habit of driving while distracted under Iowa Rule of Evidence 5.406. For the reasons discussed below, we uphold the district court's determination that the proffered evidence of the defendant's cell phone use while in a vehicle is inadmissible as habit evidence. Therefore, we affirm the decision of the court of appeals.

## I. Background Facts and Proceedings.

On June 8, 2015, Miranda Pomeroy (Pomeroy) was driving westbound on Cumming Avenue in Cumming, Iowa. At the same time, Matthew Holmes (Holmes) was riding his bicycle southbound on a bike trail heading toward Cumming Avenue. Holmes suffered injuries when he turned left onto Cumming Avenue and collided with Pomeroy's vehicle. On June 1, 2017, Holmes filed a petition and jury demand against Pomeroy alleging her negligence caused his injuries and damages.

Prior to trial, Holmes filed a motion in limine requesting exclusion of certain testimony by Dr. Andrea J. Silvers (Dr. Silvers), who arrived at the scene shortly after the collision and tended to Holmes. Dr. Silvers was expected to testify Holmes told her the accident was his fault. The district court determined Dr. Silvers could testify as to the statements. Accordingly, Dr. Silvers testified Holmes said either, "It was my fault," or "This was my fault."

Pomeroy also filed a motion in limine asking the district court to prevent Holmes from making any argument that she has a habit of driving while distracted. The district court ordered Holmes could not use evidence of Pomeroy's cell phone use while driving that occurred subsequent to the

accident to prove a habit. During trial, the evidence of cell phone use while driving was admitted only for impeachment purposes.

At the trial, Deputy Lisa Ohlinger was called as a witness by Pomeroy. She was on the scene of the accident to investigate. She testified,

> Somebody there had mentioned that somebody else maybe had thought she was texting. However, whoever told me that was not the person who witnessed it, nor did they know who allegedly witnessed that. That was complete hearsay, and I didn't have anybody to corroborate that . . . .

There was no objection. On cross-examination, Holmes asked Deputy Ohlinger, "[S]omebody told you that there may be a suspicion that she was using her cell phone while driving?" Pomeroy objected to the question as hearsay. The court sustained the objection. In closing arguments, Holmes used a PowerPoint slideshow with the statement, "A witness said Miranda was texting while driving." Pomeroy objected to the statement as hearsay. The district court sustained the objection.

The jury returned its verdict for Pomeroy. Holmes subsequently filed a motion for new trial based on misconduct. During discovery, Holmes requested all text messages, photographs, and other data on Pomeroy's cell phone from both before and after the accident. Pomeroy provided him with data and text messages from after the accident but only some data from prior to the accident. She did not produce any text messages from the date of the accident. She testified she got a new cell phone after the accident but prior to the filing of the present action, and text messages did not transfer over to her new phone. The district court gave a spoliation instruction at the request of Holmes and over objection by Pomeroy. In closing arguments, Pomeroy argued, "I don't know why he didn't look at

the texts. They were there, too." Holmes filed a motion for new trial on the basis of this statement. The district court denied the motion.

On appeal, Holmes argued the district court erred in (1) sustaining objections to hearsay evidence that had previously been admitted without objection; (2) admitting testimony he said the accident was his fault; (3) excluding evidence of the defendant's habit of using her cell phone while driving; and (4) denying his motion for new trial.

The court of appeals affirmed. Holmes applied for further review, and we granted his application. We have discretion to choose which issues we review when we take a case on further review. *See* Iowa R. App. P. 6.1103; *Hills Bank & Tr. Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009) (exercising discretion to review only one issue raised on appeal in a further review case). Therefore, we only review whether the court of appeals erred in affirming the district court's determination that the proffered evidence of Pomeroy's cell phone use while driving did not constitute habit evidence under Iowa Rule of Evidence 5.406. We let the court of appeals decision stand as to the other issues raised on appeal. *See State v. Stewart*, 858 N.W.2d 17, 19 (Iowa 2015).

## II. Standard of Review.

We generally review evidentiary rulings for abuse of discretion. *State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020).

## III. Analysis.

Holmes argues on appeal that the district court abused its discretion when it concluded that evidence of Pomeroy's cell phone use while driving is inadmissible as habit evidence.

Iowa Rule of Evidence 5.406 provides,

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with

> the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

We have defined habit evidence as "a regular practice of meeting a particular kind of situation with a specific type of conduct." *State v. Don*, 318 N.W.2d 801, 806 (Iowa 1982) (quoting *McCormick's Handbook of the Law of Evidence* § 195, at 462–63 (Edward W. Cleary ed., 2d ed. 1972)). "Evidence of habit is admissible to show that a person is likely to have acted on a particular occasion in conformity with that habit." *Id.*

The district court determined that only acts occurring *prior* to the incident in question may be used to show habit. The district court reasoned that "[s]ubsequent incidents may only be proof of a recently developed habit and therefore irrelevant to past conduct." Because the proffered instances of Pomeroy's cell phone use while driving occurred after the collision, the district court refused to admit them as habit evidence at the trial. Holmes argues subsequent acts are relevant to show a habit existed at the time of the event at issue.

Authority exists for both positions. Some courts have held that conduct subsequent to the particular occasion is irrelevant as habit evidence. *DeMatteo v. Simon*, 812 P.2d 361, 363 (N.M. Ct. App. 1991) (holding the defendant's driving record from after the accident at issue is irrelevant to show habit); *Gucciardi v. New Chopsticks House, Inc.*, 133 A.D.3d 633, 634 (N.Y. App. Div. 2015) ("Here . . . the earliest proffered instance of the purported 'habit' occurred more than two months after the date on which the appellant was injured, and was observed on only seven occasions over the next six weeks. We agree with the court's determination that the proffered evidence did not establish a habit or regular usage relevant to what occurred on the date the appellant allegedly was injured." (citations omitted)); *Jackson v. Chesapeake & Ohio Ry.*, 20 S.E.2d 489, 492

(Va. 1942) ("[T]he specific acts of negligence claimed to have been committed seven months after the alleged negligent act which caused the injury are too remote in time and too indefinite in substance to be relevant . . . .").

Other courts take the position that evidence's relevance in proving a habit is not defeated due to its occurrence after the incident in question. *United States v. Luttrell*, 612 F.2d 396, 397 (8th Cir. 1980) (per curiam) (upholding district court's admission of the defendant's failure to file timely tax returns for 1976, 1977, and 1978 as habit evidence in a prosecution for failure to file tax returns for 1974 and 1975); *Gasiorowski v. Hose*, 897 P.2d 678, 682 (Ariz. Ct. App. 1994) (holding evidence showing doctor's epidural privileges were suspended from July 1989 until September 1990 was relevant as habit evidence that he improperly administered an epidural in April 1988); *People v. Memro*, 700 P.2d 446, 462, 466 (Cal. 1985) (in bank), (determining evidence of law enforcements' conduct after the defendant's interrogation might be relevant in showing law enforcement had a habit or custom of using coercive interrogation methods), *overruled on other grounds by People v. Gaines*, 205 P.3d 1074 (Cal. 2009); *Kita v. Borough of Lindenwold*, 701 A.2d 938, 941 (N.J. Super. Ct. App. Div. 1997) (allowing admission of habit evidence that the defendant failed to maintain pipes and ditches between 1993 and 1996 in determining whether the defendant was similarly negligent prior to 1989); *In re Est. of Ciaffoni*, 446 A.2d 225, 270 (Pa. 1982) (per curiam) (holding in a will contest that wills drafted both before and after the execution of the decedent's will by the purported scrivener of the decedent's will should have been admitted).

However, we need not decide at this time whether habit evidence may be shown through specific instances that occur subsequent to the

occasion in question. We may uphold a district court's ruling that evidence is inadmissible if the evidence could be held inadmissible on any theory. *DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002). Therefore, we uphold the district court's ruling because we conclude that the proffered specific instances of Pomeroy's cell phone use while driving are not numerous enough to constitute habit evidence.

"A habit of doing a thing is naturally of probative value as indicating that on a particular occasion the thing was done as usual . . . ." *Barrick v. Smith*, 248 Iowa 195, 200, 80 N.W.2d 326, 329 (1957) (quoting *Tackman v. Brotherhood of Am. Yeomen*, 132 Iowa 64, 70–71, 106 N.W. 350, 352 (1906)). Habit may be evidenced by specific instances so long as they are "numerous enough to base an inference of systematic conduct" and "occurred under substantially similar circumstances, so as to be naturally accountable for by a system only, and not as casual recurrences." *Id.* (quoting *In re Est. of Hill*, 202 Iowa 1038, 1043, 208 N.W. 334, 336 (1926)).

In *Gamerdinger v. Schaefer*, we allowed testimony from two witnesses that the defendant had a habit of not looking in the mirror for pedestrians and objects when backing a forklift out of a trailer. 603 N.W.2d 590, 593 (Iowa 1999). One witness testified the defendant failed on a daily basis to keep a proper look out when backing up. *Id.* The other witness testified it was a "long-standing problem" for the defendant, thus prompting the witness to speak to the defendant's supervisor about the habit once or twice a month over a period of five and a half to six years. *Id.* Thus, the testimony showed the defendant had a "regular practice of responding to a particular kind of situation with a specific kind of conduct." *Id.* at 594; *see also Barrick*, 248 Iowa at 200, 80 N.W.2d at 329 (determining trial court properly admitted school bus driver's testimony that he always put the stop arm out and flasher lights on before stopping

the bus as habit evidence). This case is clearly distinguishable. On appeal, Holmes points to twenty examples of Pomeroy using her cell phone while in a vehicle from May 2015 to June 2018.[1] The vast majority of the examples consist of photos Pomeroy took while driving. In some of the examples, it is possible Pomeroy was using her cell phone while in a vehicle she was not driving. In others, it is possible the vehicle was stopped or completely parked. Holmes had access to the cell phone that Pomeroy used during the entire approximately three-year-postaccident period and this was all he could find out of over a thousand photos. Based on the limited evidence offered, Pomeroy's cell phone use while driving does not rise to the level of a habit but rather "casual recurrences." *Barrick*, 248 Iowa at 200, 80 N.W.2d at 329 (quoting *In re Est. of Hill*, 202 Iowa at 1043, 208 N.W. at 336).

**IV. Conclusion.**

For these reasons, we affirm.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

---

[1]Holmes claims in his brief that there are twenty examples of Pomeroy's cell phone use while driving. Holmes additionally argues in his application for further review that he offered fifty instances of Pomeroy's cell phone use while driving. However, the district court only admitted sixteen of the instances for impeachment purposes because many of them were not proof of cell phone use while driving or duplicates.