# IN THE COURT OF APPEALS OF IOWA

No. 23-1033
Filed March 5, 2025

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**THOMAS DEAN JESSE,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Johnson County, Kevin McKeever, Judge.

　　　A defendant appeals his forty convictions for second-degree sexual abuse, challenging the district court's denial of his motion to suppress. **AFFIRMED**.

　　　Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

　　　Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

　　　Heard by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

In October 2021, thirty-seven-year-old Thomas Jesse was back living in his parents' basement. Entering his room while he was not present, Jesse's mother observed two sexually explicit videos playing on his open laptop—one showed Jesse engaged in a sex act and in the other he was masturbating while a five-year-old boy watched. The mother eventually let a deputy sheriff into the bedroom and turned the laptop over to him. Warrants were later obtained to continue the seizure of the laptop and search its digital contents—uncovering 154 videos of various sex acts between Jesse and the boy. Another search warrant was then obtained to search the entire house for other devices that might contain more videos—and two thumb drives were found that did. Based on all this and other evidence, the State charged Jesse with forty counts of second-degree sexual abuse.

Jesse unsuccessfully moved to suppress the video evidence. He was then convicted as charged. And he now appeals his convictions, again challenging only the denial of his suppression motion. But on our de novo review, we agree with the district court that Jesse's state and federal constitutional rights were not violated. The deputy's warrantless search of Jesse's bedroom was reasonable because his mother consented to it. The short seizure of the laptop was also reasonable because it was supported by probable cause and exigent circumstances. The two warrants sufficiently described the laptop to satisfy the particularity requirement even though they contained typos in the laptop's serial number. And because Jesse's challenge to the final warrant rests on the contrary assumptions that the search and seizure of the laptop were illegal, it fails too. We thus affirm Jesse's conviction.

## I.     Factual Background and Proceedings

*Jesse's Living Arrangement*.  Even after he became an adult, Jesse lived with his parents in their house off and on "over the years."  During one such stint in the fall of 2014—when Jesse and his son both moved in so that Jesse could go back to school and his parents could watch his son—he and his parents signed a lease agreement.  His mother explained that they "just threw something together" to help Jesse "understand that what we were providing to him had value" so "that maybe he would be responsible."  While the lease required Jesse to pay rent, he did not do so "on a regular basis, if at all."  And there continued to be "periodic long bouts when he was not living" with his parents.  But his parents never gave him notice of eviction or formally terminated the lease.  Still, his mother did not consider there to be "an active lease."

In late summer 2021, after one of those bouts living with his girlfriend, Jesse returned home to live with his parents again.  Jesse lived in a walkout basement of the home, which had an open family room area, a laundry room, a bathroom, a utility room, and access to a double garage.  Jesse mainly used the family room area and the bedroom, sometimes sleeping in either space.  And his bedroom had a "simple lock" without a key that could be unlocked with a pick that was stored above the doorframe.  Jesse kept his things throughout the basement, the garage, and an outside storage area with its own entry.

While the door to the basement was typically closed, it was not locked.  And the entire family had access to the basement.  The mother entered the basement whenever she "felt like it," and had to do so to access "many things," including her storage areas and treadmill.  She also helped take care of Jesse's dogs, so she

would go to the basement to let them out.  Although she did not often unlock his bedroom, she did so on important occasions when she needed to talk to him about his son or something else and "he would be so sound asleep that knocking did not rouse him."

*Jesse's Mother's Discovery*.  Early one morning in October 2021, Jesse's mother awoke to an email from a neighbor that a "prowler" had been spotted in the neighborhood and arrested overnight.  Because his mother knew that Jesse "prowled in the neighborhood at night a lot," she was "very worried" that he had been arrested.  So she went down to her basement to see if he was home asleep.  She pounded on his locked door.  And when he did not answer, she unlocked it using the pick above the door.  Jesse was not there.

But from across the otherwise dark room, she saw Jesse's laptop screen sitting on his desk.  A video was playing on the screen showing Jesse "by himself in the midst of a sex act."  She immediately shut the door and locked it without touching the laptop.

On reflection, she decided that she did not want her husband or grandson—who were also home but still asleep—to inadvertently see the video.  So she returned to the basement and unlocked the door again.  The laptop screen was still active.  But this time it was playing a different video.  It showed Jesse sitting on a mattress with his arm around a five-year-old boy who was watching Jesse masturbate.  Jesse's mother recognized the boy as the son of Jesse's girlfriend, who he had been living with until just a couple months before.  Jesse's mother tried to stop the video by pressing the escape key.  When that did not work, she "just

shut the lid," closing the laptop screen. And she again left the room and locked the door.

She then spent much of the day at the hospital dealing with an unrelated family medical emergency. Sometime during the day, she sought the advice of one of her sisters about what to do with the laptop. And the sister agreed to call the Johnson County Sheriff's Office to "line[] things up so someone would come and get the laptop" once Jesse's mother could return home from the hospital.

*The Warrantless Search and Seizure.* Late in the afternoon, Jesse's mother got home from the hospital. A deputy sheriff arrived around 4:00 p.m. The deputy first spoke with Jesse's mother and other family members inside their front door. Jesse was not present; he had indeed been arrested and was still in the Linn County jail. They discussed their uncertainty about when Jesse would be released from jail and options for keeping Jesse away from their home. The deputy predicted Jesse would likely be released the next day and suggested that the family seek a no-contact order against Jesse. Jesse's mother described to the deputy what she had seen on the laptop, confirmed that the laptop was Jesse's, and told the deputy that Jesse did not pay them rent. The deputy then stepped outside to call the lieutenant of the department's investigation division. And the lieutenant directed him to go ahead and seize the laptop.

So the mother led the deputy down to the basement. She again unlocked the door to Jesse's bedroom and pointed out the laptop sitting closed on the desk. The deputy walked into the room, briefly opened the laptop screen, and then took the laptop and its charger. They returned upstairs and the deputy completed and gave to Jesse's mother a property control form for the laptop. The deputy testified

that it was "very clear" that the mother wanted him to take the laptop with him. He also testified that he believed that the mother had authority to let him into the house as well as authority to hand over the laptop that day.

*The Warrants for the Laptop.* The next morning, the lieutenant spoke with Jesse's mother to confirm directly what she had seen on the laptop screen. Later that day the lieutenant applied for two warrants for the laptop. And still that same day, the court reviewed the applications, found probable cause, and issued the two warrants. The first warrant authorized the continued seizure of the laptop. And the second authorized the search of the laptop's electronic contents.

Each warrant and warrant application described the laptop as "1 Bronze Acer laptop computer bearing serial number NXGKKEG0016420302D7200 and logged on Johnson County Property Control form 15061, item #1." But the actual serial number displayed on the laptop was one character different: "NXGKKEG00164203D2D7200." The supporting affidavit for each application also had another two characters off, listing it as: "NXGJJEG0016420302D7200."

After obtaining the warrants, the lieutenant took the laptop to a joint cyber lab that the department operates with the Iowa City and University of Iowa police departments. And there, the department's forensic computer detective extracted and reviewed the laptop's electronic data. The forensic computer detective never checked the serial number on the laptop because it was the only laptop in his possession, and he had no reason to believe it was not the same laptop that the warrant authorized to be searched.

The forensic computer detective found 154 videos of Jesse engaged in sex acts with his girlfriend's son. Of the 154 videos, forty-one contained separate

episodes of sex abuse, while the others were shorter portions of the same videos—some in slow motion. The forensic computer detective also found anti-forensic software on the laptop that could be used to prevent recovery of deleted files. And he determined from the electronic data that the videos had been uploaded to the laptop from "multiple devices, including a Samsung Galaxy J2 phone, a Motorol[a] Moto G Stylus, and a Sandisc Cruzer USB drive."

*The Warrant for the Search of the House.* Based on the evidence from Jesse's laptop and his mother's statements to the lieutenant that Jesse had property throughout their home, the lieutenant applied for another warrant to search his parents' house for, among other things, electronic devices that could be storing more child pornography. The court again found probable cause and issued this search warrant a little less than two weeks after the initial seizure of the laptop. In a search the same day, two thumb drives were found that contained more videos of Jesse engaging in sex acts with his girlfriend's son.

*This Criminal Proceeding.* Based mainly on the videos found on Jesse's laptop and thumb drives, Jesse was charged with forty counts of second-degree sexual abuse in violation of Iowa Code sections 709.1 and 709.3(1)(b) (2020). Jesse moved to suppress the evidence found from (1) the warrantless search of his room; (2) the warrantless seizure of his laptop; (3) the warrants authorizing the continued seizure of the laptop and the search of its contents; and (4) the warrant for the search of the house for more electronic devices. He argued the searches and seizures violated his rights under the Fourth Amendment to the United States Constitution and article 1, section 8 of the Iowa Constitution.

At a hearing on the suppression motion, the district court heard testimony from Jesse's mother, the deputy sheriff, the lieutenant who obtained the warrants, and the forensic computer detective who searched the laptop. In addition to describing his involvement in this case, the forensic computer detective offered his expert opinion about the importance of removing a laptop from its premises to disconnect it from any wireless network and prevent any loss of data from inadvertent or deliberate means. The court also received additional evidence, including the warrants and the deputy sheriff's bodycam video.

The district court eventually denied Jesse's suppression motion. The court reasoned that the warrantless search and seizure of the laptop was reasonable because Jesse's mother had actual and apparent authority to consent to the search of his room and seizure of the laptop. And alternatively, it found that the exigent-circumstances exception to the warrant requirement applied to authorize the seizure because the mother's description of the videos gave probable cause and there was a risk that the electronic evidence could not be preserved without the seizure. The court rejected Jesse's challenge to the warrants for the continued seizure and search of the laptop, finding that they particularly described the laptop "notwithstanding any possible scrivener's error" in the serial number. Finally, the court rejected Jesse's challenge to the last warrant for the entire house because it was obtained with evidence from these earlier searches, reasoning that it necessarily failed since those searches were constitutional.

Jesse unsuccessfully sought immediate discretionary review of the district court's suppression ruling. *See State v. Jesse*, No. 22-1831 (Iowa Dec. 16, 2022). Shortly after the supreme court denied his application, Jesse waived his right to a

jury trial. And the parties stipulated to a trial on the minutes of testimony. The district court found Jesse guilty on all forty counts of second-degree sexual abuse. It then sentenced Jesse to a total of seventy-five years in prison on these convictions[1] and imposed a lifetime special sentence. *See* Iowa Code § 903B.1. Jesse now appeals, again challenging only the district court's suppression ruling.

## II. Warrantless Search of Jesse's Room

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. With identical words, so too does article I, section 8 of the Iowa Constitution. *See* Iowa Const. art. I, § 8 ("The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated . . . ."). "[S]ection 8 as originally understood, was meant to provide the same protections as the Fourth Amendment, as originally understood." *State v. Burns*, 988 N.W.2d 352, 360 (Iowa 2023) (cleaned up). Thus, our supreme court's "interpretations of section 8 have often tracked with prevailing federal interpretations of the Fourth Amendment." *Id.* (cleaned up). But "if a federal interpretation of the Fourth Amendment is not consistent with the text and history of section 8," an Iowa court "may conclude that the federal interpretation should not govern our interpretation

---

[1] The court imposed twenty-five year sentences on each count—three sentences to be served consecutively and the others running concurrently. At the same time, the court also sentenced Jesse on an unrelated conviction for lascivious acts with a child. Jesse's appeal of that sentence was severed and has already been considered by our court. *See State v. Jesse*, No. 24-0705, 2024 WL 4762618 (Iowa Ct. App. Nov. 13, 2024).

of section 8." *Id.* We review the district court's denial of a motion to suppress based on either constitutional provision de novo. *See id.* at 359.

The State does not contest that Jesse's room in his parents' house was protected by the Fourth Amendment and section 8. We thus likewise assume that the room was Jesse's "house[]," U.S. Const. amend IV; Iowa Const. art. I, § 8, and that he had a reasonable expectation of privacy in the room. *See Burns*, 988 N.W.2d at 360–61, 367. Nor does the State argue that the deputy sheriff's entry into Jesse's room was not a search. And so, to decide whether either constitutional provision was violated, we need only to consider whether the warrantless search of Jesse's room was unreasonable. *See State v. Lowe*, 812 N.W.2d 554, 567–68 (Iowa 2012). "Warrantless searches are per se unreasonable" unless they "fall within one of the well-recognized exceptions to the warrant requirement." *Id.* at 568 (cleaned up). The State argues that the search falls within the consent exception because Jesse's mother consented to the search.

*Consent Exception.* Voluntary consent to a search—by the defendant or a third party "who possessed common authority over or other sufficient relationship to the premises" searched—is a long-recognized exception to the Fourth Amendment's warrant requirement.[2] *State v. Kelly*, 284 N.W.2d 236, 238 (Iowa 1979) (cleaned up); *see also United States v. Matlock*, 415 U.S. 164, 171 (1974). "Under this principle, a parent may generally consent to the search of a

---

[2] "Law enforcement officers may also rely on the apparent authority of the consenting party" when they "reasonably (though erroneously) believe that the person who has consented to their search had authority to do so." *State v. Grant*, 614 N.W.2d 848, 854 (Iowa Ct. App. 2000) (cleaned up); *see also State v. Jackson*, 878 N.W.2d 422, 429–41 (Iowa 2016).

son's or daughter's room in a house owned and occupied by the parent." *Kelly*, 284 N.W.2d at 238 (cleaned up). This is so even when the child is an adult—at least when the child lived in the parent's home "as an ordinary family member" and without paying rent. *State v. Don*, 318 N.W.2d 801, 804 (Iowa 1982).

Our supreme court has thus held that a father had actual authority to consent to the search of his nineteen-year-old son's basement room even though "[t]he father never went to the basement because of knee problems," when the son paid no rent and the father "owned the home and insisted no one could keep him out of any part of it." *Id.* As the Minnesota Supreme Court explained when similarly holding that a father could consent to a search of his adult son's room, "the father's 'house' may also be that of the child, but if a man's house is still his castle in which his rights are superior to the state, those rights should also be superior to the rights of children who live in his house." *State v. Kinderman*, 136 N.W.2d 577, 580 (Minn. 1965); *see also* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.4(b) (6th ed. 2024) (explaining that even with adult children's rooms, "the courts tend to recognize a superior right in the parents to keep the family home free of criminal activity" and "are disinclined to find that the son or daughter had exclusive possession of a particular room in the parents' residence").

Following these precedents, we agree that Jesse's mother had actual authority to consent to the search of Jesse's basement room in her home. She owns the home. While she and her husband let Jesse stay in the room when he needed to, he did not pay rent. The mother accessed the basement "any time

[she] felt like it." And although she less frequently entered his room, she did so—including to rouse him, as she had hoped to the morning of her laptop discovery.

It matters not—as Jesse highlights—that his parents once had him sign a lease agreement in an effort to make him more responsible. In the seven years since, he rarely—if ever—paid the rent due under that agreement.[3] And he moved to other residences for "long bouts." So his mother did not consider the lease "active" when he returned to live in their basement again the latest time. This abandoned parenting technique did not transform Jesse's living arrangement from one "as an ordinary family member" to a formal landlord-tenant arrangement that limited his parents' superior rights over their home. *Don*, 318 N.W.2d at 804.

True, Jesse's door had a lock. And it was locked when his mother consented to the search. But even locked, the mother had easy access to the room by using the simple pick stored above the doorframe. The bodycam video shows her unlocking the door in this manner to let the deputy into the room. She had done so twice before the same day. And she testified that she had done so previously too when there was an important reason that she needed to get in. Under these circumstances, Jesse did not have sufficiently exclusive possession of the room to defeat his parents' authority to consent to the search of their home.

---

[3] For the first time on appeal, Jesse points to a comment by his mother to the deputy that they use some of his *son's* monthly supplemental security income to defray *his son's* living expenses and suggests this fact should be relevant to considering his mother's authority to consent. Even if this argument were preserved for our review, we fail to see how the parents' receipt of federal benefits because of their care of their grandson in any way weakens their superior authority over their home or strengthens Jesse's claim to exclusive possession of his room.

And so, the warrantless search of his room with his mother's voluntary consent was reasonable and did not violate the Fourth Amendment.

*Article I, Section 8 of the Iowa Constitution.* Jesse argues that even if the warrantless search does not violate the Fourth Amendment, it violates article I, section 8 of the Iowa Constitution because it was a physical trespass. He relies solely on *State v. Wright*, which held that a warrantless trash pull was an unreasonable search and seizure in violation of section 8 because police lacked any right under the governing city ordinance to take trash, and the officer's actions were thus an unlawful physical trespass on the defendant's papers and effects. *See State v. Wright*, 961 N.W.2d 396, 416–17 (Iowa 2021) ("Within the meaning of article I, section 8, an officer acts unreasonably when, without a warrant, the officer physically trespasses on protected property or uses means or methods of general criminal investigation that are unlawful, tortious, or otherwise prohibited."). But *Wright* did not involve any assertion of a warrant exception—it focused on whether section 8 and its warrant requirement even applied to a trash pull. *See id.* at 412–20; *id.* at 429 (Appel, J., concurring specially) (explaining that the court's reasoning means that "the warrant requirement becomes applicable unless there is an exception to it" and noting "[n]o one suggests that such an exception is present in this case"). And as already discussed, that issue is not contested here.

What's more, our supreme court has recognized the consent exception under section 8, often following federal precedent. *See, e.g.*, *Lowe*, 812 N.W.2d at 577. Jesse articulates no reason that we should depart from our parental-consent precedents under the Fourth Amendment when applying section 8. Nor does he cite any authority holding that one would commit a trespass by entering

an adult child's room with the authorization of the child's parent who also lives in and owns the home. And we cannot construct his arguments for him. We thus follow the same analysis as above and hold that the warrantless search of Jesse's room with his mother's voluntary consent was reasonable and did not violate article I, section 8 of the Iowa Constitution.

### III.  Warrantless Seizure of Jesse's Computer

Jesse also challenges the warrantless seizure of his laptop. Again, the State does not contest that the Fourth Amendment and section 8 protect Jesse's interest in his laptop. So once more, we focus only on the reasonableness of the deputy's actions and consider: was it an unreasonable seizure for the deputy to take the laptop until a warrant for its continued seizure was obtained the next day?

Ordinarily, a seizure of a person's papers or effects is "*per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). But "[w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant," the U.S. Supreme Court, "has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Id.* Indeed, that Court noted in 2001 that it had "found no case in which [it] has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." *Illinois v. McArthur*,

531 U.S. 326, 334 (2001); *cf. Riley v. California*, 573 U.S. 373, 388 (2014) (reasoning in the search-incident-to-lawful-arrest context that petitioners made "a sensible concession" by agreeing "that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant" but still holding a warrant was required before *searching* the contents of the cell phones).

Our supreme court has likewise applied this exigent-circumstances-and-probable-cause exception to the Fourth Amendment's warrant requirement. *See State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001). For this exception to apply, an officer must have not just probable cause, but also "specific, articulable grounds to justify a finding of exigency." *Id.* at 109. And among other grounds for such a finding of exigent circumstances is the prevention of the destruction of evidence. *See id.* at 109-10 (rejecting "claim of exigent circumstances on the basis of potential destruction of evidence" for warrantless search and seizure of an apartment where the visible evidence was large and difficult "to destroy or disfigure" and the case did not involve "easily destroyed" evidence like drugs).

The parties have not pointed us to an Iowa case considering the warrantless seizure of a computer to prevent the potential loss of its electronic contents. But we have repeatedly held that a warrantless seizure of a cell phone can satisfy the exigency requirement given the ease of destroying the electronic data on the phone. *See State v. Sumpter*, No. 17-1622, 2018 WL 4360981, at *2 (Iowa Ct. App. Sept. 12, 2018); *State v. Richardson*, No. 22-1081, 2023 WL 4104119, at *2 (Iowa Ct. App. June 21, 2023). And courts of other jurisdictions have upheld warrantless seizures of computers to preserve evidence. *See United States v.*

*Clutter*, 674 F.3d 980, 985 (8th Cir. 2012) (reasoning that seizure of computer containing child pornography from home of the defendant's father while the defendant was in jail "was a plain old-fashioned seizure of a person's effects, based on probable cause, in order to prevent the disappearance of evidence and so that a warrant could be obtained and a search conducted" (cleaned up)); *Commonwealth v. Kaupp*, 899 N.E.2d 809, 813–14 (Mass. 2009) (holding that seizure of a computer server pending a search warrant was reasonable "[g]iven the ease with which computer files may be accessed and deleted" and the greater disruption that would have been caused by posting an officer and waiting for a warrant).

Jesse wisely concedes that his mother's statements to the deputy "gave rise to probable cause that evidence of a crime could be located on the laptop in the basement bedroom." So the fighting issue is whether exigent circumstances exist to support the seizure. We hold that the circumstances here justify the limited seizure of the laptop until a warrant was obtained the next day. By its nature, electronic evidence on a laptop is susceptible to inadvertent or deliberate loss from in-person or even remote activities. *See Clutter*, 674 F.3d at 985. Thus, as the forensic computer detective testified, it is important to remove a laptop from its premises to ensure it is disconnected from any wireless network and its data is preserved unaltered.

True, Jesse was in jail and the deputy guessed he would not be released until the next day. But it was still uncertain whether Jesse might be released sooner. It was likewise uncertain whether the laptop could be accessed remotely by anyone else—after all, it had been playing videos despite no person being

present when Jesse's mother twice entered his room.  And while the adult family members that the deputy interacted with gave him no sign that they would purposefully destroy any evidence, it was uncertain whether that might change or they would inadvertently cause the loss of any data—even just by accessing the laptop again themselves.  What's more, Jesse's son was also a resident of the home, adding a further risk of potential evidence loss.

We are also mindful of the limited nature of the intrusion into Jesse's protected interests sought to be justified here.  *See McArthur*, 531 U.S. at 331-33 (considering warrantless seizure of defendant's premises to prevent loss of evidence by "balanc[ing] the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable"); *State v. Legg*, 633 N.W.2d 763, 771–73 (Iowa 2001).  The deputy was lawfully present at the location of the laptop—so we do not hold that these exigent circumstances would justify a warrantless entry into a home.  *Cf. Legg*, 633 N.W.2d at 773 (giving weight to the less serious intrusion of a warrantless entry into defendant's garage rather than "her house proper" or "her bedroom").  The State obtained a warrant for the search of the electronic contents of the laptop before extracting them—so we do not hold that the exigencies would justify a warrantless search of those contents.  *See Kaupp*, 899 N.E.2d at 814 n.7.  And if the deputy had instead stood guard at Jesse's parents' house to ensure no physical contact with the laptop while waiting for a warrant, despite their desire that he take the laptop, that would have been as much or greater an intrusion into their privacy and possession of their home.  *See Commonwealth v. Hinds*, 768 N.E.2d 1067, 1073 (Mass. 2002) (upholding warrantless seizure of computer based on probable cause and exigencies,

reasoning that posting officers while awaiting a warrant "would have been more intrusive to the defendant's and his family's privacy rights than simply to secure the defendant's hard drive and keyboard").

Bottom line, we agree with the district court that the temporary seizure of the laptop to preserve its electronic contents until obtaining a warrant was supported by probable cause and exigent circumstances. So it was not an unreasonable seizure under the Fourth Amendment.[4]

*Article I, Section 8 of the Iowa Constitution.* As he did with respect to the warrantless search of his room, Jesse relies on *State v. Wright* to argue for a different analysis of the constitutionality of the warrantless seizure of his laptop under article 1, section 8 of the Iowa Constitution. But again, he does not flesh out any argument as to why it necessarily follows from *Wright* that we abandon the long-recognized warrant exceptions, including the exigent-circumstances-and-probable-cause exception applicable here. And so, for the same reasons discussed above, we decline to deviate from our Fourth Amendment analysis and hold that the temporary warrantless seizure of the laptop did not violate article I, section 8 of the Iowa Constitution because it was supported by probable cause and exigent circumstances.

## IV.    Particularity of the Warrants for Jesse's Laptop

Jesse next argues that the district court should have suppressed all the evidence found on his laptop because the applications for the warrants—and the

---

[4] Because we agree with this ground for the district court's decision, we do not consider its alternative ground that the seizure was reasonable because of the mother's consent or the other grounds urged by the State but not decided by the district court.

warrants themselves—authorizing the laptop's continued seizure and search did not particularly describe the laptop since the serial number in the description contained typos. Jesse is *factually* correct. Both warrants and their applications replaced a letter "D" in the serial number with the numeral "0." And the supporting affidavits contained a second typo in the serial number, replacing the letters "KK" with "JJ." The actual twenty-two-character serial number and the versions used in the warrant documents are summarized below with the typos in bold:

| Actual Serial Number | NXGKKEG00164203D2D7200 |
| Warrant Applications | NXGKKEG0016420303**0**2D7200 |
| Warrant Affidavits | NXG**JJ**EG0016420303**0**2D7200 |
| Warrant Authorizations | NXGKKEG0016420303**0**2D7200 |

Beyond the serial number, each warrant also described the laptop to be seized and searched as "1 Bronze Acer laptop computer . . . logged on Johnson County Property Control form 15061, item #1." And the warrant documents described that this logged laptop had been turned over by Jesse's mother, who said it belonged to Jesse.

Our federal and state constitutions both require that a warrant describe its scope with particularity. *See* U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Iowa Const. art. I, § 8 ("[N]o warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized."); *see also* Iowa Code § 808.3(1)(a) (2021) (requiring warrant application to "describe the person, place, or thing to be

searched and the property to be seized with sufficient specificity to enable an independent reasonable person with reasonable effort to ascertain and identify the person, place, or thing"). This particularity requirement "forbids the use of general warrants" and prevents "arbitrary police intrusion" by leaving nothing "to the discretion of the official executing the warrant." *State v. Thomas*, 540 N.W.2d 658, 662 (Iowa 1995). Even so, it does not demand "a hypertechnical, perfectly accurate description"—only "that the descriptions in the warrant and affidavits be sufficiently definite to enable the searcher to identify the persons, places or things the magistrate has previously determined should be searched or seized." *Id.* (cleaned up).

Our supreme court has thus held that a warrant which omitted the city of the premises to be searched was sufficiently particular in its description when it still included a "physical description," and "the street address, apartment number, county, and state." *State v. Randle*, 555 N.W.2d 666, 669 (Iowa 1996). And other courts applying the Fourth Amendment have held that even erroneous information in the description does not invalidate the warrant when the description includes "sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort" and there is no "reasonable probability that another premise might be mistakenly searched." *Lyons v. Robinson*, 783 F.2d 737, 738 (8th Cir. 1985) (cleaned up). So describing the wrong street for a house is not fatal. *See id.* Neither is an incorrect license plate for a car. *See Wangrow v. United States*, 399 F.2d 106, 114–15 (8th Cir. 1968) (rejecting argument that search and seizure of car with license plate "VT 6016" was invalid because affidavit listed "VT-6106" and warranted listed "BT-6106"); *see also Willard v. State*, 400

N.E.2d 151, 155 (Ind. 1980). Nor "a slightly erroneous" serial number of a product when it was the only such product located on the premises. *United States v. Rytman*, 475 F.2d 192, 192–93 (5th Cir. 1973) (per curiam) (overlooking discrepancy between warrant listing "CH490TA-9-2085, Serial #AA00-2002" and the actual number, "CH490TA-9-A2085, Serial #A90-2002").

The description of the thing to be searched and seized in these two challenged warrants satisfies the particularity requirement of our state and federal constitutions.[5] For starters, even without the serial number, the description was sufficiently definite to enable the detective to identify Jesse's laptop. It described the type of thing (a laptop) and its color (bronze) and its brand (Acer). It also specified that the particular laptop was already taken in possession of Johnson County and "logged on Johnson County Property Control form 15061, item #1." With this level of detail and under these circumstances, no reasonable person would have had any doubt about what thing was being authorized to remain seized and be searched just from this information alone.

The inclusion of an almost-correct serial number does not weaken the particularity of this description. The only difference between the correct serial number and the serial number listed on the warrant and the warrant application was a single character in the middle of a twenty-two-character string of letters and numbers—a replacement of an upper-case "D" with the number "0." Even

---

[5] Although Jesse has argued the warrants violate both constitutions, neither party argues that the particularity requirement differs under either constitution. So we do not separately analyze either claim. *See Randle*, 555 N.W.2d at 669 (analyzing the particularity requirement simultaneously under the Fourth Amendment, article I, section 8 of the Iowa Constitution, and Iowa Code section 808.3).

assuming that a searcher could discern the difference between those two similar-looking characters when comparing the warrant to the laptop, it would be obvious that it was a mere typographical or scrivener's error made by the warrant applicant who presumably also had difficulty discerning whether that character was a letter or number. *Cf. State v. Bakker*, 262 N.W.2d 538, 544–45 (Iowa 1978) (holding that "typographical error" in date of warrant stating it was issued three days after the search occurred did not invalidate warrant); *State v. Angel*, 893 N.W.2d 904, 912 & n.7 (Iowa 2017) (holding that judge's failure to properly strike out "is not" from the warrant endorsement was a "scrivener error" that did not invalidate warrant). And because the other surrounding twenty-one characters of the serial number matched, there was no reasonable possibility of a second laptop that was actually the one authorized to be searched.[6] It might be a closer call if the serial number did not match at all—or if the search had been to find a single laptop in a computer lab with dozens of similar ones. But here, the warrants particularly described Jesse's laptop. The district court correctly rejected his challenge to the validity of the warrants.

---

[6] We think the serial number listed on the warrant's authorization and application matters more than the number included in the supporting affidavit. But the second error included in the number on the affidavit does not materially alter any of this analysis. The replacement of "KK" with "JJ," is likewise clearly a typographical or scrivener's error. Rather than being caused by the visual similarity in the characters, this error was presumably caused by the geography of the standard keyboard—the key for the letter "J" is immediately next to the key for the letter "K." But even so, with nineteen of the twenty-two characters the same and two explainable errors buried in the middle, the discrepancy casts no doubt on the specific thing to be searched and seized.

**V.      Probable Cause for the Warrant to Search the House**

Finally, Jesse challenges the search warrant for the entire house that led to the discovery in his room of two thumb drives with more sexually explicit videos. He argues that when all the evidence obtained from the earlier allegedly illegal searches and seizures "is excised from the search warrant authorizing the search of Jesse's living quarters, it lacks probable cause." But this argument fails because it rests on his other arguments that the earlier searches and seizure were illegal. Because we have rejected those arguments, Jesse's challenge to the use of that evidence to find probable cause for this final warrant necessarily fails. Jesse does not—and did not in the district court—make any alternative argument that this warrant also lacked probable cause *with* all the other challenged evidence. So we do not consider that possibility. The district court thus did not err in denying Jesse's motion to suppress the evidence from the thumb drives found in the search authorized by this final warrant.

**AFFIRMED.**